IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

GENEE TOWNSEND                                                                              PLAINTIFF

v.                                                                    CAUSE NO: 1:22-CV-17-SA-RP

TOYOTA MOTOR MANUFACTURING,
MISSISSIPPI, INC., and
EMPLOYBRIDGE (RESOURCE MFG)                                                               DEFENDANTS

ORDER AND MEMORANDUM OPINION

On January 24, 2022, Genee Townsend initiated this civil action by filing her *pro se* Complaint [1] against EmployBridge ("ResourceMFG") and Toyota Motor Manufacturing Mississippi, Inc. ("Toyota"). Now before the Court are ResourceMFG and Toyota's separate Motions for Summary Judgment [64, 69]. Townsend has not responded to the Motions [64, 69], and the time to do so has long passed. Having reviewed the parties' filings and the applicable authorities, the Court is prepared to rule.

*Factual Background*[1]

Genee Townsend began working for a staffing agency, ResourceMFG, in September 2019. On December 2, 2019, ResourceMFG assigned Townsend to work as a temporary production worker at Toyota. Townsend was assigned to work on the Body Weld and Shellbody 1 Team. This team was responsible for assembling vehicle luggage compartments and hoods. At the beginning of her Toyota assignment, Townsend was assigned a team leader and group leader. A short time after Townsend began working, Rashidi Dixon became the group leader and Deion Wells became

---

[1] The Court feels compelled to note that, although it must view the evidence in the light most favorable to Townsend at this stage in the proceedings, Townsend's failure to respond to the present Motions [64, 69], has undoubtedly made the Court's task in this regard more difficult. Taking that into account, most of the facts are taken from the Defendants' Memoranda [65, 70] because Townsend's *pro se* Complaint [1] provides only minimal factual details.

the team leader who oversaw Townsend's group. Townsend reported to Wells as the team leader and Wells reported to Dixon as the group leader.[2]

Because Townsend was a ResourceMFG employee, any disciplinary actions she received during her Toyota assignment were governed under ResourceMFG's progressive disciplinary policy. This plan contained four corrective actions steps: coaching, documented discussion, final warning, and separation. It was Toyota's duty to report any misconduct to ResourceMFG. In turn, ResourceMFG issued a corrective action report to correspond with the appropriate step from the plan. As a ResourceMFG employee, Townsend reported any problems during her assignment to ResourceMFG's Human Resource Office, not Toyota's office.

During the Toyota assignment, Toyota reported several of Townsend's performance issues to ResourceMFG. On January 16, 2020, Toyota informed ResourceMFG that Townsend violated the attendance policy. Townsend was issued a coaching under the corrective action plan for the violation. She was informed that the next step under the plan would be a documented discussion. Townsend was provided supporting documentation, which she signed confirming she received this corrective action. On February 19, 2020, Townsend received a documented discussion for another attendance issue. Toyota also reported this infraction to ResourceMFG. Townsend again signed that she received this corrective action. Six months later, on August 24, 2020, Townsend received another documented discussion for missing the start of her shift and not wearing the proper work gear. Although Townsend disputed whether she was notified about the shift change time, she admitted that she was late for the shift and signed the documentation.

Townsend contends that after the August 24, 2020 infraction, she called Ashley Minch, a

---

[2] Although Townsend cannot recall the exact date, she contends that shortly after Dixon and Wells became the group leader and team leader, she made verbal reports to both Dixon and Wells that Jimmy Brooks, another Toyota employee, sexually harassed her.

2

ResourceMFG Human Resource employee, and informed her that Wells was being mean, and Dixon was unresponsive when Townsend informed him of Wells' behavior toward her. For reasons that will be more clear hereinafter, Minch contends that during this phone call, Townsend made no mention whatsoever that she had been the victim of any sexually inappropriate behavior or gender discrimination.

On September 1, 2020, Townsend was issued a final warning for being absent from work. As mandated under the policy, Townsend was required to write a commitment letter, explaining her commitment to the job and her position. She submitted the letter to ResourceMFG's Human Resource Office on September 9, 2020. The letter included criticism of both Dixon and Wells and further explained how Townsend felt like she was being blamed for other employees' problems, but it did not include any allegations of discrimination or sexual harassment.

Townend contends that sometime prior to receiving her final warning, she went to the ResourceMFG office and reported to Minch that Jimmy Brooks, another Toyota employee, sexually harassed her. Although unsure whether she provided it in writing, Townsend testified that she verbally informed Minch that Jimmy Brooks made sexually inappropriate statements to her and even asked for sexual favors on one occasion. Townsend alleges that Minch told her that she would report Townsend's complaint to human resources, and they would do a follow-up. Sometime thereafter, a ResourceMFG Human Resource employee reached out to Townsend to follow-up on her previous complaint.

On January 7, 2021, Townsend received another disciplinary infraction, which resulted in her termination from her Toyota assignment. According to Toyota, Townsend failed to follow the standard work process which resulted in a bolt defect on one of the cars. Although she denies fault, Townsend admits that she was signed in for the area where the defect was found. Townsend alleges

3

that when she met with Dixon about the defect, she expressed to him that she did not want to sign off that she was responsible because the defect was not her fault; however, after Dixon assured her that she was not in trouble, Townsend signed the defect form. After determining that Townsend was responsible, Dixon reported this infraction to ResourceMFG. Minch informed Dixon that Townsend was on the last step of the corrective action plan and this infraction would result in Townsend being terminated from her Toyota assignment. After discussing the issue with Dixon, on January 11, 2021, Minch called Townsend to inform her that she was being terminated from her Toyota assignment as a result of reaching the final step of the corrective action plan.

On June 9, 2021, Townsend filed separate EEOC Charges against ResourceMFG and Toyota. In both Charges, she alleges, among other things, that "[she] was treated less favorably than [her] male co-workers when [she] was harassed about [her] work performance…[she] believes [she was] discriminated against because of [her] sex (female) and retaliated against…" [69], Ex. 23, 24. On January 24, 2022, Townsend filed this lawsuit against ResourceMFG and Toyota alleging sex discrimination, wrongful termination, retaliation, and sexual harassment under Title VII. Both Defendants seek dismissal of all Townsends' claims.

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240, at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *Celotex*, 477 U.S. at 323). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Mgmt of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

*Analysis and Discussion*

As noted above, Townsend asserts claims of sex discrimination, retaliation, sexual harassment, and wrongful termination against both ResourceMFG and Toyota. Both Defendants have filed Motions for Summary Judgment [64, 69] seeking dismissal of Townsend's claims. Although some of their arguments differ, both Defendants contend that Townsend cannot establish a prima facie case of discrimination, wrongful termination, or retaliation and that she failed to exhaust administrative remedies regarding her sexual harassment claim. The Court will address each of Townsend's claims in turn.

I. *Townsend's Discrimination Claim*[3]

"To establish a prima facie case of discrimination, the plaintiff must either present direct evidence of discrimination or, in the absence of direct evidence, rely on circumstantial evidence using the *McDonell Douglas* burden shifting analysis." *Wittmer v. Phillips 66 Co.*, 915 F.3d 328, 332 (5th Cir. 2019). Under the *McDonnell Douglas* framework, a plaintiff must show "(1) that she is a member of a protected class; (2) that she was qualified for the position sought; (3) she was subject to an adverse employment action; and (4) she was replaced by someone outside of her protected class or was treated less favorably than other similarly situated employees outside her class." *Newbury v. City of Windcrest, Tex.*, 991 F.3d 672, 679 (5th Cir. 2021) (internal citations omitted). If the plaintiff establishes a prima facie case of discrimination, "the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). "If the employer articulates a legitimate, non-discriminatory reason for the employment decision, the plaintiff must then be afforded an opportunity to rebut the employer's purported explanation, to show that the reason given is merely pretextual." *Id.*

As to some elements, ResourceMFG and Toyota make different arguments as to the ways in which Townsend's claim fails, but they agree that Townsend cannot meet her burden under the fourth element because she cannot show that she was replaced by someone outside of her protected class or that she was treated less favorably than other similarly situated employees outside of her class. To establish the fourth element by showing that she was treated differently than a similarly

---

[3] The Court notes that Townsend alleges a wrongful termination against both Defendants. The Fifth Circuit has held that "wrongful termination claims are also evaluated under the *McDonnell Douglas* framework." *Willis v. Cleco Corp.*, 749 F.3d 314, 320 (5th Cir. 2014). Thus, Townsend's wrongful termination claim will be addressed under the same analysis as her discrimination claim.

situated employee, Townsend must "demonstrate that the employment actions at issue were taken under nearly identical circumstances." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). Townsend must identify an employee who "[h]eld the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Id.*

Here, Townsend has not provided any evidence—or even an allegation—that she was replaced by a male employee. At most, Townsend provided testimony that a male Toyota team member, who Townsend only identifies as "Jeremy", was responsible for the defect that Townsend received a corrective action for on January 7, 2021, and that he was not disciplined. However, she has come forward with no evidence that Jeremy was a ResourceMFG employee or subject to ResourceMFG's disciplinary plan. Thus, there is no evidence before the Court that ResourceMFG even had the authority to determine whether Jeremy remained employed at Toyota. *See West v. City of Houston, Tex.*, 960 F.3d 736, 741 (5th Cir. 2020) (holding that plaintiff's discrimination claim failed because her alleged comparators did not share the same supervisor as plaintiff). Since Townsend has not come forward with any evidence on these points, she cannot survive summary judgment on this element.

Setting aside the fourth element, ResourceMFG also contends that Townsend cannot meet her burden as to the second element because she was not qualified for her position. ResourceMFG alleges that when Townsend reached the final step under the corrective action plan, she was no longer qualified for the Toyota assignment. According to ResourceMFG, "the position required that an individual refrain from incurring four relevant steps in the progressive discipline corrective action process." [65] at p. 11. ResourceMFG's corrective action policy provides:

> The first time you are late or absent you will be issued a coaching.
> This will go in your file for 12 months. The Coaching will prohibit

7

> you from transferring to Toyota for the next 12 months. If you are late or absent again (within 12 months) you will be issued a documented discussion. If there is a third occurrence of attendance within 6 months of a documented discussion, there will be a Final Warning issued. It will go in your file for 12 months and the VFM TM will be required to write a commitment letter. Procedure violations or quality violations follow the same standard. If there is a fourth occurrence within 12 months of a Final Warning (for Attendance or Performance), there will be a decision made to determine if your employment should continue.

[69], Ex. 3 at p. 55.

To support its contention that Townsend was no longer qualified for the position, ResourceMFG relies on the Fifth Circuit's holding in *Johnson v. Louisiana*, 351 F.3d 616 (5th Cir. 2003). There, the Fifth Circuit concluded that employers may rely on objective job requirements "in arguing that a prima facie case is not established because the employee is not qualified." *Johnson*, 351 F.3d at 622.

Here, Townsend received an infraction at every level of the corrective action plan. She admitted and signed for being late for her first corrective action that she received on January 16, 2020, for which she received a coaching. On February 19, 2020, and again on August 24, 2020, Townsend received documented discussions. Both documented discussions happened within 12 months of her coaching infraction and were related to attendance issues. Although there is some dispute about whether Townsend was informed about a change in her shift time on August 24, 2020, she nonetheless signed that she received both corrective actions. Roughly a week later, on September 1, 2020, Townsend was late for work. Since this was her third attendance issue within six months of receiving a documented discussion, this infraction resulted in a final warning. As required under the policy, Townsend submitted a commitment letter expressing her determination to improve in her job performance. On January 7, 2021, Townsend reached the final step under the plan when she was disciplined for a defect that occurred in the area that she was signed in for

8

on the production line. This disciplinary plan applied to all ResourceMFG employees who were on an assignment at Toyota. Townsend reached every step of the plan and, as a result, was no longer qualified to remain as a team member at Toyota as of January 7, 2021.

As previously noted, Townsend has not responded to the present Motion [64]. Consequently, she has not provided any evidence to rebut these arguments or show that she was otherwise qualified for her position. Therefore, in light of ResourceMFG's properly supported Motion [64], Townsend cannot survive summary judgment on the second element.

The Court notes that Toyota also argues that Townsend cannot meet her burden under the third element.[4] However, having already determined that Townsend cannot survive summary judgment on the second and fourth elements, the Court sees no need to analyze Toyota's argument on that point. Townsend has failed to come forward with evidence to preclude summary judgment on her discrimination claim, and that claim is hereby dismissed.

II.  *Townsend's Retaliation Claim*

Townsend also asserts a retaliation claim against both Defendants. Retaliation claims are also analyzed under the *McDonnell Douglas* burden-shifting framework. *Hudson v. Lincare, Inc.*, 58 F.4th 222, 231 (5th Cir. 2023). "To establish a prima facie case of retaliation, [the plaintiff] must show that: 1) [she] engaged in a protected activity; 2) [she] suffered an adverse employment action; and 3) there is a causal connection between the two." *Owens v. Circassia Pharm., Inc.*, 33 F.4th 814, 835 (5th Cir. 2022) (citing *Saketoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 999 (5th Cir. 2022)). "If a plaintiff succeeds in making a prima facie case, the burden then shifts to the

---

[4] For context, ResourceMFG does not dispute that Townsend suffered an adverse employment action when she was terminated from her Toyota Assignment. Conversely, Toyota argues that it did not take an adverse employment against Townsend because ResourceMFG actually employed Townsend. In other words, Toyota argues that it did not have the authority to end her assignment at Toyota. Because the second and fourth elements are dispositive, the Court sees no need to delve into this issue any further.

defendant to proffer a legitimate rationale for the underlying employment actions. If the defendant makes this showing, the burden shifts back to the plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext for retaliation." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004) (citing *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001)).

Before analyzing the parties' arguments, the Court finds it necessary to determine when Townsend actually engaged in a protected activity. Both ResourceMFG and Toyota contend, without conceding, that, at most, Townsend could have engaged in a protected activity sometime in January and February 2020, when she alleges that she made verbal complaints of sexual harassment against Jimmy Brooks to Dixon and Wells. The Court notes that in its supporting Memorandum [65], ResourceMFG argues that Townsend never made a report about sexually inappropriate behavior to anyone in human resources. *See* [65] at p. 5 n. 2. However, Townsend testified that she made verbal complaints of sexual harassment to Minch sometime after her August 24, 2020 corrective action but before she was issued a final warning on September 1, 2020. Townsend's testimony on this point was as follows:

> Q. So this is your lawsuit, we're in federal court; right, and did you tell Ashley Minch about anything that was happening with Jimmy Brooks?
>
> A. I had told her, and I told Rashidi. But as far as writing it down, I really don't remember.
>
> . . .
>
> Q. What did you tell her specifically?
>
> A. That he was saying inappropriate things, you know, to me.
>
> . . .
>
> Q. Did you say what the inappropriate things were?

10

> A. Yeah, I told her.
>
> Q. That's what I'm asking you. What did you tell her? I want to know exactly what you told her.
>
> A. That's what he said, that he asked me to S his D-I-C-K.
>
> Q. You told Ashley Minch that?
>
> A. I told her that.
>
> Q. So three hours ago you said that you didn't know whether or not—
>
> A. Whether I wrote it down or not but I had told her.
>
> . . .
>
> Q. So you told her that Jimmy asked about oral sex?
>
> A. Asked me, yes.
>
> . . .
>
> Q. And that occurred—and that occurred at some point after the August 25th, 2020, write up but before the next one that occurred in September?
>
> A. Uh-huh.

[64], Ex. 2 at p. 52-54, 56.

For summary judgment purposes, the Court accepts Townsend's testimony that she reported the sexual harassment at some point after August 24, 2020 and before the September final warning.

Both ResourceMFG and Toyota contend that Townsend cannot establish a causal connection between her protected activity and the adverse employment action. "Close timing between an employee's protected activity and adverse action against [her] *may* provide the 'causal connection' required to make out a prima facie case of retaliation." *Lyons v. Katy Indep. Sch. Dist.*,

11

964 F.3d 298, 305 (5th Cir. 2020) (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)) (emphasis in original). "Such temporal proximity must generally be 'very close.'" *Feist v. La., Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511, 149 L. Ed. 2d 509 (2001)). The Fifth Circuit has found a four-month time lapse sufficient for temporal proximity, while holding that five months, without other evidence of retaliation, is not close enough. *See Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002). In *Feist*, the Fifth Circuit upheld the district court's dismissal of the plaintiff's retaliation claim because other than the five-month time lapse, the plaintiff did not provide any other evidence of a causal link between the protected activity and the adverse employment action. *Feist*, 730 F.3d at 455.

Here, Townsend engaged in a protected activity at the end of August 2020 when she reported sexual harassment to Minch. This activity occurred approximately five months prior to her being terminated from her Toyota assignment on January 7, 2021. The Fifth Circuit has already held that a five-month time lapse, without more, is insufficient to establish a causal connection. *See Raggs*, 278 F.3d at 472; *Feist* 730 F.3d at 455.

Importantly, the Court notes that Townsend testified that ResourceMFG did not retaliate against her:

> Q. Are you alleging that ResourceMFG separated your assignment from Toyota because of your gender?
>
> A. No.
>
> Q. And are you alleging that ResourceMFG ended your assignment with Toyota because somebody at ResourceMFG was retaliating against you?
>
> A. No. Nobody at ResourceMFG didn't retaliate against me, but

12

>  they let them retaliate against me, they let Toyota retaliate against me, and they fired me over the phone. They fired me for no reason at all, and they fired me over the phone.

[64], Ex. 2 at p. 60.

Townsend has not provided the Court with any other evidence of a causal connection between her protected activity and the adverse employment action. This is fatal to her claim. *See Raggs*, 278 F.3d at 472. Townsend has provided no evidence to link her protected activity to the adverse employment action. Townsend's retaliation claim fails against ResourceMFG and Toyota as a matter of law. That claim is hereby dismissed.

## III. Townsend's Sexual Harassment Claim

The Defendants jointly argue that Townsend failed to exhaust administrative remedies for her sexual harassment claim. "Before an individual can pursue a Title VII claim in federal court, she must first exhaust her available administrative remedies. Exhaustion occurs when an individual files a timely complaint with the EEOC, her claim is dismissed by that agency, and the agency informs her of her right to sue in federal court." *Hall v. Cont'l Airlines, Inc.*, 252 F. App'x 650, 653 (5th Cir. 2007) (citations omitted). "Ordinarily, an employee may not base a Title VII claim on an action that was not previously asserted in a formal charge of discrimination to the EEOC, or that could not 'reasonably be expected to grow out of the charge of discrimination.'" *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006)).

Here, neither of Townsend's EEOC Charges include or reference sexual harassment. Both Charges provide, in pertinent part:

> On December 2, 2019, I began working [at] ResourceMFG assigned to work at Toyota Manufacturing in the team member position. During my employment, I complained to management (ResourceMFG and Toyota) I was treated less favorably than my male co-workers when I was harassed about my work performance.

13

> In September 2020, Deon [] Team leader/Toyota gave me a write-up for which I denied. On January 7, 2021, I informed Rashidi Dixon, group leader/Toyota that Jeremy [] GTA/Toyota was responsible for the missing bolts. On January 7, 2021, my employment was terminated. I believe I have been discriminated against because of my sex (Female) and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

[69], Ex. 23-24.

Townsend makes no mention of sexually inappropriate comments or being sexually harassed in any way. Instead, her Charges only reference claims of sex discrimination and retaliation. Even liberally construing the language in her Charges and even though she uses the word "harassed," it is used in the context of her work performance and not used to support a claim of sexual harassment. As the Fifth Circuit has held, "a vague or circumscribed EEOC charge will not satisfy the exhaustion requirement for claims it does not fairly embrace." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 274 (5th Cir. 2008) (quoting *Marshall v. Fed. Express Corp.,* 130 F.3d 1095, 1098 (D.C. Cir. 1997)). Neither of her EEOC Charges include sexual harassment allegations. Therefore, the Court finds that Townsend did not exhaust her administrative remedies as to her sexual harassment claim. That claim is therefore dismissed.

*Conclusion*

For reasons set forth above, ResourceMFG and Toyota's Motions for Summary Judgment [64, 69] are GRANTED. The claims set forth in Townsend's Complaint [1] are DISMISSED *with prejudice*. A Final Judgment will issue this day. This CASE is CLOSED.

SO ORDERED, this the 4th day of December, 2023.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE